**NO. 24-46**

_____

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

**UNITED STATES OF AMERICA,**
Plaintiff-Appellee.
v.
**IVAN GRANILLO**,
Defendant-Appellant.

_____

Appeal from the
United States District Court
for the Southern District of California
Honorable Robert S. Huie, Presiding
No. 23-cr-1419-RSH

_____

**APPELLANT'S OPENING BRIEF**

_____

VERONICA PORTILLO-HEAP
FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Suite 900
San Diego, CA 92101
(619) 234-8467T
Veronica_Portillo-Heap@fd.org

Attorneys for Mr. Granillo

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................iv

INTRODUCTION ........................................................................1

STATEMENT OF JURISDICTION ...................................................2

BAIL STATUS ..........................................................................3

RELEVANT LEGAL PROVISIONS ..................................................3

ISSUES PRESENTED ..................................................................3

STATEMENT OF THE CASE .........................................................4

I.    Mr. Granillo agreed to do a friend a favor by driving another
      person to San Ysidro .......................................................4

II.   The government charged Mr. Granillo with an attempted
      transportation offense and the case proceeded to trial.................7

III.  The district court excluded all evidence of the passenger's
      immigration fraud and third-party culpability ..........................11

IV.   The district court denied Mr. Granillo's proposed instruction for
      the elements of the offense ................................................13

V.    During deliberations, the jury asked for clarification about the
      *mens rea* required for conviction .......................................16

SUMMARY OF THE ARGUMENT ....................................................18

ARGUMENT ............................................................................20

I.    **The district court's failure to instruct the jury on an
      essential element of § 1324(a)(1)(A)(ii) attempted
      transportation requires reversal** ........................................20

      A.   The standard of review is *de novo* .....................................20

i

B. An attempted transportation under § 1324(a)(1)(A)(ii) requires a specific intent to transport or move a non-citizen in violation of immigration law ............................................. 20

C. The district court's jury instruction was deficient because it did not require an element of specific intent ....................... 23

D. The jury instruction's omission of the specific intent element was not harmless ................................................................. 26

II. **The court reversibly erred by excluding evidence of third-party culpability, contrary to the Federal Rules of Evidence and the constitutional right to present a defense** ..................................................................................................... 30

A. Form I-213 and the Sworn Statement were admissible under the Federal Rules of Evidence ............................................. 30

1. The standard of review is *de novo* ............................. 31

2. The proferred exhibits were relevant under Rule 401 ..................................................................................... 32

3. The exhibits were statements against interest under Rule 804(b)(3) and business records under Rule 803(6) ..................................................................................... 37

a. Both exhibits contained statements against interest ............................................................. 37

b. Form I-213 was admissible as a business record ................................................................ 40

4. The exhibits were also admissible as 404(b) evidence to show the passenger's knowledge and intent ............. 42

5. The court erred by excluding the exhibits under Rule 403 without conducting any balancing analysis ........ 45

B. The court's evidentiary rulings violated Mr. Granillo's Fifth and Sixth Amendment right to present a defense ............. 45

1. The standard of review is *de novo* ..............................45

2. The court's exclusion was arbitrary and disproportionate to the reliability concerns the hearsay rules are designed to serve .........................................45

C. The court's error was not harmless because it prevented Mr. Granillo from establishing the factual predicates to support his defense theory ..............................................................47

CONCLUSION ........................................................51

CERTIFICATE OF COMPLIANCE .................................................52

ADDENDUM...............................................................................

# TABLE OF AUTHORITIES

Page(s)

## CONSTITUTIONAL PROVISIONS

Fifth Amendment of the U.S. Constitution ............................................3

Sixth Amendment of the U.S. Constitution.............................................3

## FEDERAL CASES

*Braxton v. United States*,
  500 U.S. 344 ...........................................................................22

*Crane v. Kentucky*,
  476 U.S. 683 (1986) ...............................................................47

*Delaware v. Van Arsdall*,
  475 U.S. 673 (1986) ...............................................................26

*Greene v. Lambert*,
  288 F.3d 1081 (9th Cir. 2002) ................................................46

*Holmes v. South Carolina*,
  547 U.S. 319 (2006) ...............................................................48

*United States v. Barajas-Montiel*,
  185 F.3d 947 (9th Cit. 1999) .............................................25, 26

*United States v. Cruz-Garcia*,
  344 F.3d 951 (9th Cir. 2003) ..................................................43

*United States v. Dominguez*,
  954 F.3d 1251 (9th Cir. 2020),
  *cert. granted, judgment vacated*, 142 S. Ct. 2857, 213 L. Ed. 2d 1082
  (2022), and *reinstated in part by* 48 F.4th 1040 (9th Cir. 2022)...........21

*United States v. Espinoza*,
  880 F.3d 506 (9th Cir. 2018) ....................................... *passim*

*United States v. Gergen*,
  172 F.3d 719 (9th Cir. 1999) ..................................................20

*United States v. Gracidas-Ulibarry*,
  231 F.3d 1188 (9th Cir. 2000) ..................................... *passim*

*United States v. Hansen*,
  599 U.S. 762 (2023) ...........................................................21, 22

*United States v. Hinkson*,
  585 F.3d 1247 (9th Cir. 2009) ................................................32

iv

*United States v. Mirabal,*
  98 F.4th 981 (9th Cir. 2024) .......................................................... 32, 49
*United States v. Montoya-Gaxiola,*
  796 F.3d 1118 (9th Cir. 2015) ............................................................. 26
*United States v. Ruiz-Lopez,*
  749 F.3d 1138 (9th Cir. 2014) ............................................................. 41
*United States v. Stever,*
  603 F.3d 747 (9th Cir. 2010) ......................................................... 47, 49
*United States v. Vallejo,*
  237 F.3d 1008 (9th Cir. 2001),
  *opinion amended on denial of reh'g,* 246 F.3d 1150 (9th Cir. 2001)...50
*United States v. Wells,*
  879 F.3d 900 (2018) ....................................................................... 31, 43
*United States v. Wright,*
  625 F.3d 583 (9th Cir. 2010) ............................................................. 43

## FEDERAL STATUTES

8 U.S.C. § 1182(a)(6)(A)(i) ......................................................................38
8 U.S.C. § 1324(a)(1)(A) ..........................................................................3
8 U.S.C. § 1324(a)(1)(A)(ii) ............................................................ *passim*
18 U.S.C. § 1001 .....................................................................................38
18 U.S.C. § 3231 .......................................................................................2
21 U.S.C. §§ 952, 960 .............................................................................34
28 U.S.C. § 41 ...........................................................................................2
28 U.S.C. § 84(d) ......................................................................................2
28 U.S.C. § 1291 .......................................................................................2
28 U.S.C. § 1294(1) ..................................................................................2
28 U.S.C. § 1783(a) .................................................................................38

## FEDERAL RULES

Fed. R. App. P. 4(b)(1) .............................................................................3
Fed. R. Evid. 401 ........................................................................ 3, 30, 32
Fed. R. Evid. 403 ................................................................... 3, 30, 45, 46
Fed. R. Evid. 404 ............................................................ 3, 19, 30, 42, 43
Fed. R. Evid. 803(6) ..................................................................... *passim*
Fed. R. Evid. 804(a)(5)(b) ................................................................ 37, 38
Fed. R. Evid. 804(b)(3) .................................................................. *passim*

INTRODUCTION

The prosecution's case against Ivan Granillo was circumstantial on the only issues that mattered: whether he knowingly and intentionally attempted to transport a non-citizen within the United States, contrary to immigration law, under 8 U.S.C. § 1324(a)(1)(A)(ii).

At trial, the evidence showed that Mr. Granillo drove up to the San Ysidro Port of Entry on June 23, 2023, with a passenger sitting next to him in the front seat. The passenger presented a United States passport. But that passport belonged to another person and the passenger was not a United States citizen. The central dispute at trial was whether Mr. Granillo *knew* the passenger was a non-citizen and *intended* to violate immigration law by driving to the inspection booth.

The government had no direct evidence of Mr. Granillo's alleged knowledge and intent. Its case centered on circumstantial evidence, primarily text messages on the passenger's phone. These messages between the passenger and another individual indicated that a man named Ivan Granillo would drive the passenger to the border.

It is well-settled that when Congress uses the word "attempts" in a criminal prohibition, a specific intent to commit the completed crime

1

is required for conviction. The government charged Mr. Granillo with "Attempted Transportation." But the court failed to instruct the jury that the requisite *mens rea* was the intent or purpose to violate immigration law. The court's instruction confused the jurors, who wrote notes requesting clarification about the mental state required for guilt.

The court's jury instruction error was compounded by its evidentiary rulings excluding all evidence that the passenger had presented invalid documents to officers, to unwittingly have them further his violation of law. The proffered exhibits constituted third-party culpability evidence—the passenger's prior fraud against the United States government made it more likely that he was willing to trick a civilian into helping him enter the United States illegally. The exclusion of this evidence misinterpreted the Federal Rules of Evidence and violated Mr. Granillo's constitutional right to present a defense.

## STATEMENT OF JURISDICTION

The district court had original jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction from a final order entered in the Southern District of California. *See* 28 U.S.C. §§ 41, 84(d), 1291, 1294(1).

Mr. Granillo filed a timely notice of appeal on January 3, 2024. 3-ER-369; Fed. R. App. P. 4(b)(1).[1]

## BAIL STATUS

Mr. Granillo has completed his custodial sentence and is serving his three-year term of supervised release.

## RELEVANT LEGAL PROVISIONS

The addendum contains a copy of 8 U.S.C. § 1324(a)(1)(A), Federal Rules of Evidence 401, 403, 404, 803(6), 804(a), 804(b)(3), and the Fifth Amendment and Sixth Amendments to the United States Constitution.

## ISSUES PRESENTED

1. Given that the information charged an attempt, did the district court reversibly err by refusing to instruct the jury that specific intent to violate immigration law was an essential element of the offense?

2. By excluding all evidence of the passengers' prior immigration fraud, did the court reversibly err by (1) misinterpreting the Federal Rules of Evidence and/or (2) depriving Mr. Granillo of his constitutional right to present a defense?

---

[1] In this brief, "ER" stands for "Excerpts of Record."

### STATEMENT OF THE CASE

On June 23, 2023, Ivan Granillo drove to the San Ysidro Port of Entry and was arrested, along with the front-seat passenger, Jorge Alberto Cisneros Sanchez. Mr. Granillo was charged with "attempt[ing] to transport or move" an undocumented person "in furtherance of such violation of law." 3-ER-306 (citing 8 U.S.C. § 1324(a)(1)(A)(ii)). The passenger was detained as a material witness. The case proceeded to a jury trial, and Mr. Granillo was found guilty.

## I. Mr. Granillo agreed to do a friend a favor by driving another person to San Ysidro.

At trial, Mr. Granillo testified in his own defense. He explained that on June 23, 2023, he woke up at 5:30 a.m. at his home in Tijuana, where he lives with his wife and their two youngest children. 2-ER-175, 191. He planned to cross the border to San Diego that morning for grocery shopping and to check his Post Office box, as was his routine. 2-ER-179. Mr. Granillo's friends and neighbors were familiar with his routine of crossing the border several times a week, typically for work. 2-ER-178–79, 190. That morning, he wanted to get an early start to avoid long wait times at the port of entry. 2-ER-181, 191.

4

Mr. Granillo had stayed up late the night before to repair a "very bad oil leak" on his wife's car. 2-ER-184. He has insomnia and averages two to five hours of sleep a night. 2-ER-184–85. That night, Mr. Granillo had two friends over to help work on his wife's car. 2-ER-183, 185. At 2:00 a.m., they were still hanging out when another friend (and former neighbor) Jorge "popped by." 2-ER-185, 188. Mr. Granillo had known Jorge over 15 years. 2-ER-186. Jorge asked Mr. Granillo whether he could give his friend Alejandro a ride the next morning. 2-ER-190. Jorge explained that Alejandro had a "bad hand" and "couldn't drive." *Id.* Mr. Granillo agreed to do this last-minute favor for Jorge because he "trusted him" and "didn't have any reason not to." 2-ER-191. After chatting with Jorge, Mr. Granillo went to bed. *Id.*

Before 6:00 a.m., Mr. Granillo confirmed with Jorge where to pick up the friend. Jorge directed him to a nearby convenience store. 2-ER-191, 198. Mr. Granillo drove to that store and saw a man standing outside the store with a bandaged hand. 2-ER-193. As Mr. Granillo pulled up, he realized he "forgot his name" but did remember that "he had a bandage on his hand." *Id.* He called out "Jorge," since "that was

5

[the name of his] friend that asked [him] for the favor"; the man with the bandaged hand approached and got in the front seat. *Id.*

Mr. Granillo asked the passenger "if he had his papers," and the passenger said he did. 2-ER-193–94. The passenger "showed [him] the book. He had a [passport] book in his hand." 2-ER-194. Everything seemed "legit," so Mr. Granillo did not ask to examine it. *Id.*

Mr. Granillo drove to the port of entry line and made small talk with the passenger. 2-ER-194. As they got closer to the primary booth, the passenger seemed nervous. *Id.* Mr. Granillo observed that "people [who] are not used to crossing the border, they get nervous" sometimes, 2-ER-195, since "facing authority" can be stressful for "someone that is not used to" it. 2-ER-203. Mr. Granillo sympathized and told the passenger that "everything was all right because his documents were in order." 2-ER-202–03.

Once at pre-primary inspection, the passenger "handed [Mr. Granillo] his passport." 2-ER-195. Mr. Granillo held up his California identification and the passenger's passport and immigration officers waived them up to the primary inspection booth. *Id.* Then Mr. Granillo "handed [their] papers to the officer." 2-ER-196.

The primary officer examined the two documents and conducted an "imposter check," by "comparing the face on the document that was presented to the traveler." 2-ER-71. He determined that Mr. Granillo's "document was rightfully his." *Id.* The officer then turned to the passenger and scanned the passport to enlarge the photo and "conduct a better facial comparison." 2-ER-73–74. He "walked around to the passenger's side [to] get a better [] visual of the passenger's face." 2-ER-74. He "conduct[ed] a field interview," *id.*, and called a nearby officer "to get a second opinion" on whether the passenger was an imposter. 2-ER-76. Finally, a "third officer came over" and "verified that it was an imposter that [they] were dealing with." 2-ER-82. Mr. Granillo was arrested, and the passenger was detained as a material witness.

Mr. Granillo was eager to cross the border and told several untruths, such as that the passenger was his friend and neighbor. 2-ER-196. In fact, he believed that the passenger was his former neighbor's friend, or a friend of a friend. 2-ER-190.

## II. The government charged Mr. Granillo with an attempted transportation offense and the case proceeded to trial.

Several weeks later, the government filed an information charging Mr. Granillo with "Attempted Transportation" of an undocumented

person in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). 3-ER-306. That

provision prohibits any person from:

> knowing or in reckless disregard of the fact that an alien has come
> to, entered, or remains in the United States in violation of law,
> transport[ing], or mov[ing] or attempt[ing] to transport or move
> such alien within the United States by means of transportation or
> otherwise, in furtherance of such violation of law.

8 U.S.C. § 1324(a)(1)(A)(ii). But the government alleged only that

Mr. Granillo "did knowingly attempt to transport and move said alien

within the United States by means of transportation and otherwise in

furtherance of such violation of law." 3-ER-306. In other words, the

count alleged that Mr. Granillo knew he was transporting a non-citizen

but not that he knew he was doing so in violation of immigration law.

The case proceeded to a jury trial. The officer from the primary

inspection booth testified about his encounter with Mr. Granillo and the

passenger. 2-ER-65–82. He explained that he conducted an "imposter

check" of the passenger, comparing his face to the passport photo. 2-ER-

71. He also testified that a line of yellow speed bumps demarcates the

international boundary between Mexico and the United States. 2-ER-

64. To drive north to the primary inspection booth, a passenger must

cross the boundary and thus "ha[s] to travel in[to] the United States."

8

*Id.* The area between the international boundary and the primary booth is called "pre-primary" and contains cameras and license plate readers; passengers hold up their documents to show that they have entry documents for inspection. 2-ER-83.

Next, the government read two stipulations to the jury. 2-ER-97–100. The first stipulation provided that:

> the [passenger] is an alien with no lawful right to enter or remain in the United States; … [who] attempted to enter the United States illegally on or about June 23, 2023; was found in a vehicle driven by the defendant via the San Ysidro Port of Entry; was having others pay on his behalf $5,000 to others to be brought into the United States illegally and/or transported or moved illegally …; [and] may be released … for return to [his] country.

2-ER-97–98; 3-ER-302–03. Accordingly, the passenger was deported before trial. 3-ER-305.

Pursuant to the second stipulation, the government played a video of the passenger's post-arrest interview, which was largely consistent with Mr. Granillo's testimony. 2-ER-99–100; 3-ER-311–54.[2] The passenger said that he met Mr. Granillo on that same morning outside of a convenience store. 3-ER-328–29. A few days before, a man named

---

[2] Redactions in original. 3-ER-336–41.

Adrian gave the passenger a United States passport for $5,000. 3-ER-325. Adrian told the passenger to memorize the passport's contents. 3-ER-326. That morning, Adrian told him to go to a convenience store near his hotel, because "a friend who was on his way there would come by and give [him] a ride." 3-ER-329. The driver would recognize him because he was told that the passenger's hand was bandaged. 3-ER-329–30. The driver called out "Jorge," and the passenger walked over to the driver's car. 3-ER-330. The officer asked the passenger whether the driver asked him if he memorized the information, and he said no, he did not. 3-ER-332.

The government also introduced text messages on the passenger's cell phone screen from "Gerardo," dated June 22, 2023, stating:

> Jorge, pal, the last time you crossed was on Monday in the morning in your gray Nissan Rogue SUV with your kids through San Ysidro. Your name. Don't forget why you came to Tijuana. To see your wife. How long were you in Tijuana? Only for the weekend.
> The friend who is taking you is Ivan Granillo. That's your friend giving you a ride because you injured your hand [emoji] and you can't drive. Okay. Where do you know Ivan from? From the company. You guys worked together and from Tijuana. Ivan Granillo, the driver.

2-ER-111 (reading 3-ER-355–56). These messages to the passenger described a story to tell at primary to try to pass off the United States

10

passport as his own, including when he last crossed, who he last crossed with, why he needed a ride, how long he was in Mexico, and more.

The officer also testified about voice messages sent to the passenger from "Adrian," dated June 17 and 18, 2023. 2-ER-119. The "messages refer[red] to an earlier plan … for a driver that crossed on Sundays and Mondays." *Id.* Mr. Granillo's crossing record indicated that "he didn't only cross on Sundays and Mondays." 2-ER-120–21. The passenger's crossing records indicated the first plan fell through, because he was not apprehended until June 23, 2023. 2-ER-121. The officer also admitted he "didn't do any further follow-up on Adrian or Gerardo," even though he had their cell phone numbers. 2-ER-122.

## III. The district court excluded all evidence of the passenger's immigration fraud and third-party culpability.

Before trial, the defense provided its exhibits to the government, including L through R, produced in discovery. 3-ER-393. On the first day of trial, the defense informed the government that it planned to introduce L through R through the A-file custodian. *See* 3-ER-357–68.

As relevant here, Exhibit L was a "Record of Deportable Alien" prepared by an immigration officer, including biographic information about the passenger and the officer's observations of the passenger's

11

interview, with a date and signature. 3-ER-357. This exhibit indicated that the passenger had obtained a counterfeit work permit listing another's person's A-number and that he used that counterfeit permit to apply for a social security number. *Id.*

Exhibit Q was a "Record of Sworn Statement In Proceedings Under § 235(b)(1) of the Act" signed by the passenger and the officer who recorded his statement. 3-ER-363–65. The passenger admitted he had been deported and knew he was prohibited from trying to return for at least five years but attempted to reenter just two years later. 3-ER-364. He also admitted he had lived and worked in the United States without authorization. *Id.*

Before the defense could begin its case-in-chief, the government asked for a conference outside the presence of the jury. 2-ER-136. It moved to exclude all defense exhibits (L through R) from the passenger's A-file. 2-ER-136–65 (oral argument); 3-ER-287–91 (brief).

The defense argued the A-file documents were admissible under Rule 803(6) as records of regularly conducted activities by immigration officers and that the passenger's statements within them were statements against interest under Rule 804(b)(3). 2-ER-141, 145. The

defense also argued the exhibits were admissible under Rule 404(b) because they showed the passenger's knowledge of the scheme and intent to defraud the United States and Mr. Granillo. 2-ER-142, 146. Additionally, the defense argued that the exhibits showed that the passenger was "a repeat person who knows how to commit fraud on the United States," which made it "more likely that Mr. Granillo [wa]s not guilty" but rather was duped. 1-ER-20. The defense also invoked the constitutional right to present a defense, arguing that these exhibits were relevant third-party culpability evidence. *Id.*

The district court ruled that every exhibit was inadmissible because it was not relevant. 1-ER-11–20. The court, without further explanation, also pointed to hearsay, improper impeachment, and Rules 403 and 404 as additional grounds of exclusion. *Id.* The court ordered: "neither the document[s] nor the content of the document[s] would be admissible," even on cross-examination. 1-ER-12.

## IV. The district court denied Mr. Granillo's proposed instruction for the elements of the offense.

After the close of evidence, the court proposed using the Ninth Circuit's Manual of Model Criminal Jury Instructions, Instruction 7.2

(Alien—Illegal Transportation or Attempted Transportation (8 U.S.C.

§ 1324(a)(1)(A)(ii)). 1-ER-28–29. That instruction lists five elements:

> First, [*name of alien*] was an alien;

> Second, [*name of alien*] was not lawfully in the United States;

> Third, the defendant knew or acted in reckless disregard of the fact that [*name of alien*] was not lawfully in the United States;

> Fourth, the defendant knowingly attempted to transport or move [*name of alien*] to help him remain in the United States illegally; and

> Fifth, the defendant did something that was a substantial step toward committing the crime.

> A "substantial step" is conduct that strongly corroborates a defendant's intent to commit the crime. To constitute a substantial step, a defendant's act or actions must unequivocally demonstrate that the crime will take place unless interrupted by independent circumstances. Mere preparation is not a substantial step toward committing the crime.

1-ER-8.

The defense requested a modified instruction. 3-ER-295–97

(briefing). As relevant here, the modified fourth element read: "the

defendant acted with the intent to violate the immigration laws by

assisting [the passenger] to enter the United States illegally." 2-ER-295.

14

The defense argued the model instruction was deficient "because it does not specify that specific intent to violate the immigration laws is required for an attempted transportation." 3-ER-296.

In support of this modification, the defense quoted *United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1192 (9th Cir. 2000) (en banc), and its holding that "'Congress' use of the word 'attempt' in a criminal statute manifests a requirement of specific intent to commit the crime attempted.'" 3-ER-299; 1-ER-30 (oral argument). The defense reiterated that "because the Government has charged this [case] as an attempt, the jury needs to be instructed that Mr. Granillo had a specific intent to violate the immigration laws." 1-ER-30.

The court ruled it would "follow the model," because it "encompass[ed] both transportation and attempted transportation." 1-ER-32. However, the court did not engage with the case law or substance of the objection. *Id.* In fact, when reading final instructions to the jury, the court omitted the word "intent" as to "substantial step," reading: "A substantial step is conduct that strongly corroborates a defendant's to commit the crime." 2-ER-253 [sic]. The model instruction states: "A 'substantial step' is conduct that strongly corroborates a

15

defendant's intent to commit the crime." 1-ER-8. The model instruction does not otherwise use or explain the term "intent." *See id.*

The court also instructed that the theory of defense was that "Mr. Granillo was unaware that [the passenger] was attempting to enter the United States unlawfully." 2-ER-253–54.

## V. During deliberations, the jury asked for clarification about the *mens rea* required for conviction.

After closing arguments, the jury deliberated for several hours before they broke for the day. *See* 2-ER-258–63. The next morning, the jury resumed deliberations and submitted two notes about the meaning of "knowingly" in element four. 3-ER-308–10. The jurors asked:

- o In #4, does the word illegally apply only to helping him remain in the U.S., or to the whole sentence? Does "knowingly" apply to the whole sentence or only attempting to transport or move?

- o Does the Element (4) "the defendant knowingly attempted to transport or move [the passenger] to help him remain in the United States illegally" require: 1) Defendant know [the passenger] was an alien prior to imposter check?

3-ER 309–310.

The defense highlighted that both questions were "directly connected to the instruction" the defense proposed as to specific intent, and "renew[ed its] request" for an instruction requiring intent to

"violat[e] the immigration laws." 2-ER-263. The court did not make a ruling on that request but implicitly denied it. *See* 2-ER-263–77.

The court provided counsel with draft responses to the juror questions. *See* 2-ER-263. As to juror note 2, the court proposed a response that the defendant must have known the passenger was not a United States citizen "before [he] approached the primary booth at the San Ysidro Port of Entry." 2-ER-264. The government argued that the defendant's knowledge could have developed "at any point after he enter[ed] the United States," even while in line at the San Ysidro Port of Entry. *Id.* The court expressed concern with the government's theory, opining that it "seem[ed] to be a very slender reed on which to base a conviction; the idea that, in a matter of seconds, somebody develops the knowledge and then lies." 2-ER-267. The defense agreed. 2-ER-268.

The court decided that its response needed to "join[] up the actus reus and the mens rea." 2-ER-271. The jury was called back, and the court reread the requirements for elements 3 and 4. 2-ER-276–77. Notably, the court also said that "'[k]nowingly' applies to 'attempted to transport or move [the passenger] to help him remain in the United

States illegally." 2-ER-277. The jury was *not* told whether "knowingly" applied "to help him remain in the United States illegally." *See id.*

The jury continued to deliberate. 2-ER-278. Later that day, the jury found Mr. Granillo guilty of the sole count in the information. 2-ER-279–81. This appeal of his conviction follows. 3-ER-369.

## SUMMARY OF THE ARGUMENT

The district court erred by failing to instruct the jury on an essential element of Attempted Transportation under 8 U.S.C. § 1324(a)(1)(A)(ii). This Court has long held that "Congress' use of the term 'attempts' in a criminal statute manifest[s] a requirement of specific intent to commit the crime attempted, even when the statute d[oes] not contain an explicit intent requirement." *United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1192 (9th Cir. 2000) (en banc). The text of the statute ("attempts to transport or move") indicates that § 1324(a)(1)(A)(ii) is a specific intent offense. So to be found guilty, Mr. Granillo must have had the purpose (or conscious desire) to not only transport or move a non-citizen, but to do so in violation of immigration law. The court's omission of this essential element was not harmless and requires reversal.

Second, the district court erred by excluding all evidence of the passenger's prior fraudulent immigration-related acts. The excluded evidence showed the passenger had previously presented documents under false pretenses, so that the government would unwittingly permit him to violate the law. That evidence was relevant because it made it more likely that the passenger used deception against Mr. Granillo, setting him up to unwittingly help him violate the law as a "blind mule" or "unknowing driver." The court erred by excluding all evidence of this fraud, despite its relevance, admissibility as statements against interest under Rule 804(b)(3), and admissibility as Rule 404(b) evidence. This ruling also constitutes constitutional error because it deprived Mr. Granillo of his right to present a defense. He could not adequately present his third-party culpability theory because all supporting evidence of the passenger's immigration fraud was excluded. The Court must reverse because these errors were not harmless.

ARGUMENT

**I.    The district court's failure to instruct the jury on an essential element of § 1324(a)(1)(A)(ii) attempted transportation requires reversal.**

The government charged Mr. Granillo with the "Attempted Transportation" of his non-citizen passenger. But the court refused to instruct the jury that a conviction required it to find that the defendant had the specific intent or purpose to transport the passenger in violation of law. Mr. Granillo's conviction must be reversed because the jury was not instructed on an essential element of the offense.

**A.    The standard of review is *de novo*.**

Whether jury instructions fail to include an essential element of a crime is a question of law reviewed *de novo*. *United States v. Gergen*, 172 F.3d 719, 724 (9th Cir. 1999).

**B.    An attempted transportation under § 1324(a)(1)(A)(ii) requires a specific intent to transport or move a non-citizen in violation of immigration law.**

As relevant here, § 1324(a)(1)(A)(ii) creates an offense for anyone who "attempts to transport or move" a non-citizen "within the United States" to further their being present "in violation of law." 8 U.S.C. § 1324(a)(1)(A)(ii). As with any "attempt" offense, a violation of

20

§ 1324(a)(1)(A)(ii) requires a specific intent to "commit every element of the completed crime." *United States v. Dominguez*, 954 F.3d 1251, 1261 (9th Cir. 2020), *cert. granted, judgment vacated,* 142 S. Ct. 2857, 213 L. Ed. 2d 1082 (2022), and *reinstated in part by* 48 F.4th 1040 (9th Cir. 2022).

This Court has "held that Congress' use of the term 'attempts' in a criminal statute manifest[s] a requirement of specific intent to commit the crime attempted, even when the statute d[oes] not contain an explicit intent requirement." *Gracidas-Ulibarry*, 231 F.3d at 1192. This rule derives from the fundamental rule of statutory construction that, "[w]hen Congress has used a term that has a settled common law meaning, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning." *Id.*

In other words, "when Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word." *United States v. Hansen*, 599 U.S. 762, 778 (2023) (quotation omitted). Put simply, "when Congress transplants a common-law term, the old soil comes with it." *Id.* (quotation omitted.)

21

Plenty of "old soil" comes with the word "attempt," which is a term of art with a "settled common law meaning." *Gracidas-Ulibarry*, 231 F.3d at 1193. An "attempt" requires "the specific intent to engage in criminal conduct and … an overt act which is a substantial step towards committing the crime.'" *Id.* at 1192 (quotation omitted). Specifically, "attempt" at common law included "a specific intent to commit the unlawful act." *Braxton v. United States*, 500 U.S. 344, 351 n.* (1991).

The Supreme Court has already held that 'attempt' as used in §§ 1324(a)(1)(A)(i)–(iii) means "taking a substantial step toward the completion of a crime with the requisite *mens rea*." *Hansen*, 599 U.S. at 775 (quotation omitted). "After all, when a criminal-law term is used in a criminal-law statute, that—in and of itself—is a good clue that it takes its criminal-law meaning." *Id.*

Requiring specific intent for an 'attempt' also serves a vital purpose. It resolves "uncertainty whether the defendant's purpose was indeed to engage in criminal, rather than innocent, conduct." *Gracidas-Ulibarry*, 231 F.3d at 1193. Because attempts do not constitute completed acts, "a heightened intent requirement is necessary to ensure that the conduct is truly culpable." *Id.*

22

Here, § 1324(a)(1)(A)(ii)'s use of 'attempt' means the jury had to be instructed that Mr. Granillo had the specific intent or purpose to transport or move the noncitizen "in violation of law." In *Gracidas-Ulibarry*, this Court explained that "'purpose' corresponds to the concept of specific intent." 231 F.3d at 1196. A "person who causes a result prohibited by … statute is said to have acted purposely if he or she consciously desired that result." *Id.* Thus, the requisite *mens rea* of an attempted § 1324 transportation is that "the defendant had the purpose, i.e., conscious desire," to transport or move a non-citizen within the United States in violation of immigration law. *Id.*

## C. The district court's jury instruction was deficient because it did not require an element of specific intent.

The jury instruction given at Mr. Granillo's trial provided that the defendant must have "knowingly attempted to transport or move [the passenger] to help him remain in the United States illegally." 1-ER-8. This instruction was deficient for three reasons.

First, the instruction did not expressly convey the specific intent requirement. A *mens rea* of a specific intent or purpose is required when Congress uses the word 'attempt.' *Gracidas-Ulibarry*, 231 F.3d at 1196.

23

The instruction was deficient because it did not require that "the defendant had the purpose, i.e., conscious desire," to transport the passenger in the United States in violation of immigration law. *Id.*

Second, the instruction required a *mens rea* of "knowingly." Whereas "'purpose' corresponds to the concept of specific intent … 'knowledge' corresponds to general intent." *Gracidas-Ulibarry*, 231 F.3d at 1196. The instruction was deficient because it expressly conveyed a general intent requirement, rather than a specific intent.

Third, the instruction did not identify what had to have been "knowingly" done: whether "knowingly" carried over to the person's remaining in the United States illegally, or whether it applied only to the transporting or moving the person. 1-ER-8. Indeed, the jurors asked whether "knowingly appl[ied] to the whole sentence or only [to] attempting to transport or move." 3-ER-309. The court's response failed to identify what the defendant must have "knowingly" done. 2-ER-277. The instruction and response did not indicate whether Mr. Granillo had to have knowingly (or purposely) helped the passenger remain illegally.

The jury also had questions about the timing of when Mr. Granillo became aware of the passenger's "illegal" immigration status. 3-ER-

24

309–310. Specifically, the jury asked whether Mr. Granillo must have "know[n] [the passenger] was an alien prior to imposter check." 3-ER-313. The jury also asked whether "illegally appl[ied] only to helping [the passenger] remain in the US, or to the whole sentence." 2-ER-310. Apparently, the jury did not understand whether Mr. Granillo was guilty if he drove to the primary booth believing the passenger was a United States citizen. *See* 3-ER-309–310.

The defense's proposed instruction would have obviated the need for the jury's questions. 2-ER-295 (requiring "intent to violate United States immigration laws by assisting [the passenger] to enter the United States illegally"). The proposed instruction indicated that Mr. Granillo had to have arrived at the primary booth with the purpose of passing off the passenger as a United States citizen. The court's instructions failed to communicate that if Mr. Granillo drove to the primary booth believing he was transporting a United States citizen, then he could not have had the purpose to violate the immigration laws.

The government may try to rely on *United States v. Barajas-Montiel*, 185 F.3d 947 (9th Cit. 1999), also under § 1324(a)(1)(A)(ii). In that case, the trial court instructed that the defendant must have

25

"knowingly transported or moved or attempted to transport or move the alien *in order* to help the alien remain in the United States illegally." *Id.* at 953–54 (emphasis added). This Court upheld that instruction, but reliance on *Barajas-Montiel* is mistaken for two reasons. First, the defendant there was charged with Transportation, not Attempted Transportation. *Id.* at 950. Second, there, the trial court used the words "in order" to modify "to help the alien remain in the United States illegally." *Id.* at 954. At Mr. Granillo's trial, the court did not use the words "in order. *See* E-12.

### D. The jury instruction's omission of the specific intent element was not harmless.

When the court fails to instruct the jury as to an essential element, "[t]he Government's burden in proving harmless error is a high one[.]" *United States v. Montoya-Gaxiola*, 796 F.3d 1118, 1124–25 (9th Cir. 2015). Reversal is required unless this Court "may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986).

Mr. Granillo testified that he believed the passenger was presenting his own United States passport. 2-ER-173–74, 197. The defense argued that Mr. Granillo was not guilty because he simply

intended to give a United States citizen a ride as a favor to a good friend. 2-ER-190. If the jury believed that Mr. Granillo thought the passenger was a citizen, he could not have had the specific intent to violate the immigration law.

This was a wholly circumstantial case. The government argued that "[t]he defendant's lies, along with the messages on [the passenger's] cell phone and [the passenger's] statement" proved the requisite *mens rea*. 2-ER-232. The government harped on his alleged "nervous behavior in primary." 2-ER-234. According to the government, his comments of "[i]s everything all right, Officer?" and "[h]e's my neighbor. That's all I know" indicated he was guilty. 2-ER-235.

But the defense had explanations for the "three pieces of evidence that [we]re … the foundation of the government's case": (1) "text messages"; (2) "port of entry video"; and (3) "the passenger's statement." 2-ER-238. First, the text messages on the passenger's phone described a story for the passenger to tell at the primary booth to try to pass off the United States passport as his own. 3-ER-355. The texts told the passenger that "the last time you crossed was on Monday … in your gray Nissan Rogue with your kids through San Ysidro … Don't forget

why you came to Tijuana. To see your wife." *Id.* The defense argued, "If Mr. Granillo was in on it, they wouldn't have needed to give [the passenger] a story." 2-ER-238. Mr. Granillo "could have given him the story while they were driving … They gave [the passenger] the story before because Mr. Granillo didn't know." *Id.*

The text messages also showed the passenger planned to cross on June 17, 2023, but "the first driver that they were going to use backed out. So the smugglers needed a new plan, and they needed a new victim." 2-ER-239. Messages saying Ivan Granillo would be the driver simply indicated "Jorge had already decided he was going to betray Mr. Granillo … [and] ask [him] to give his friend a ride." 2-ER-238.

Second, the port of entry video indicated it took three officers to determine the passenger was an imposter. 2-ER-239. At a glance, it was not obvious that the passport did not belong to the passenger. *See id.* Mr. Granillo lied by saying the first thing that popped into his head; he wanted to run errands, not hide the passenger's status. 2-ER-196.

Third, the passenger's statement indicated that the interviewing agent "never asked" whether "Mr. Granillo ever looked inside the passport." 2-ER-241. If he did not see the inside, he could not have

known the faces did not match. The agent "kept trying to put words in [the passenger's] mouth" such as "'Obviously Ivan also knew,' ... 'Didn't he ask you if you already memorized the information?' What did the passenger say? 'No. No. No.'" *Id.*

Finally, the defense highlighted the lack of evidence. There were no messages and "no connection" between Mr. Granillo and the passenger, Mr. Granillo and Gerardo, or Mr. Granillo and Adrian. 2-ER-242. The agents "didn't even pick up the phone and dial a number for Alejandro, for Adrian, [or] for Gerardo. ... They didn't even try because they already decided Mr. Granillo was guilty ... case closed." *Id.*

Moreover, as indicated above, the jury had questions regarding the requisite *mens rea.* 3-ER-309–10. Given the centrality of the *mens rea* issue, the government cannot establish beyond a reasonable doubt that the jurors would have convicted Mr. Granillo had they been instructed on the specific intent requirement. Thus, the error was not harmless, and the Court should remand for a new trial.

**II.** **The court reversibly erred by excluding evidence of third-party culpability, contrary to the Federal Rules of Evidence and the constitutional right to present a defense.**

The court excluded every proffered exhibit about the passenger's prior fraudulent acts and false statements to federal officers. 1-ER-11–20. These exhibits showed the passenger had prior knowledge and intent to defraud the United States—by presenting documents under false pretenses, so that officers would unknowingly further his violation of law. This third-party culpability evidence made it more likely the passenger could have conspired with others to set up Mr. Granillo as a blind mule. The court excluded the documents under Rules 401, 403, 404, and 803, but none of these rules were legitimate bases for exclusion. But even if the exhibits were not admissible under the rules of evidence, the rules should have yielded, and the exhibits admitted to protect Mr. Granillo's constitutional right to present a defense.

**A.** **Form I-213 and the Sworn Statement were admissible under the Federal Rules of Evidence.**

Exhibit L, the I-213 Record of Deportable Alien ("Form I-213"), showed the passenger applied for a social security number at a Social Security office by using a counterfeit work permit with another person's A-number. 3-ER-357. Exhibit Q, the Record of Sworn Statement

("Sworn Statement"), showed the passenger applied for admission by using a visa he knew was invalid, given he was recently deported. 3-ER-363. In both instances, the passenger presented documents under false pretenses to get other people to unwittingly help him violate the law. This third-party culpability evidence went to the passenger's intent, plan, and knowledge. Here too, the passenger presented a document under false pretenses to get immigration officers to unwittingly allow him unlawful entry into the United States. If the passenger intended to defraud not just the United States but also Mr. Granillo, it was more likely that Mr. Granillo was not "in on" the plan, did not know of the intent to defraud, and was not guilty.

### 1. The standard of review is *de novo*.

This Court "review[s] *de novo* the construction or interpretation of the Federal Rules of Evidence, including whether particular evidence falls within the scope of a given rule." *United States v. Wells*, 879 F.3d 900, 914 (2018) (quotation omitted). "Where the district court fails to engage in necessary Rule 403 balancing, [this Court] likewise review[s] *de novo*." *Id.* And whether "evidence falls within the scope of Rule 404(b) is a question [this Court] review[s] *de novo*." *Id.* at 924–25.

In some instances, this Court reviews a district court's exclusion of evidence for abuse of discretion under a two-part test. *United States v. Mirabal*, 98 F.4th 981, 985 (9th Cir. 2024). First, the Court "determine[s] *de novo* whether the trial court identified the correct legal rule." *United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc). "If the trial court failed to do so, … it abused its discretion." *Id.* at 1262. Second, this Court determines "whether the trial court's application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the record." *Id.* (quotation omitted).

## 2. The proffered exhibits were relevant under Rule 401.

This Court's decisions "dictate[] that all evidence of third-party culpability that is relevant is admissible, unless barred by another evidentiary rule." *United States v. Espinoza*, 880 F.3d 506, 512 (9th Cir. 2018). Under Rule 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and the fact is "of consequence in determining the action." Fed. R. Evid. 401.

The defense argued that Form I-213 and the Sworn Statement were relevant to the defense theory that the passenger was "part of [a] larger scheme … used to trick Mr. Granillo" into being a blind mule. 2-ER-146. These exhibits constituted "[t]hird-party culpability" evidence, which is any "evidence to show that another person may have had knowledge" needed to set up Mr. Granillo. 2-ER-147. The defense also argued that acts showing the passenger's "knowledge, lack of mistake, and intent" to deceive were relevant to show the passenger's intent to dupe the government and Mr. Granillo. 2-ER-142.

Specifically, the defense argued that Form I-213 showed the passenger had "direct knowledge o[f] how to conduct this type of fraud"; he "secured the invalid work [permit]" himself and then tried to dupe Social Security. 2-ER-148. The Sworn Statement showed that, after deportation, he "used an invalid border crossing card to, again, try to enter the United States" illegally by duping the government. *Id.*

This evidence was relevant "to show [the passenger's] knowledge of the schemes that are used to try and … trick immigration authorities." 2-ER-146. It also showed the passenger was a "repeat

[offender]" and capable of conspiring (e.g., with Adrian, Gerardo, and Jorge) to set up a blind mule to drive him across the border. 1-ER-20.

The defense also pointed to "evidence that directly support[ed] [its] theory" in the passenger's interview. 1-ER-26. The interviewing officer was "very surprised that [he] was only paying $5,000 because the going rate is ... $15,000." *Id.* (discussing 3-ER-328–29.) The passenger "was in Tijuana for months trying to figure out" how to be smuggled across the border; this supported an inference that he was "savvy" about the schemes and "going rate." 1-ER-26 (discussing 3-ER-322). The lower $5,000 price made sense if the smugglers were "cutting the driver out ... [and] not paying the thousands of dollars th[ey] usually pay the driver" by using an unknowing driver like Mr. Granillo. 1-ER-26.

The court excluded Form I-213 and the Sworn Statement on relevance and other grounds. 1-ER-11, 19. The court explained:

> I haven't seen any evidence supporting the theory that the [passenger] ... was somehow a mastermind or somehow was tricking Mr. Granillo. That's not reflected in ... these documents or anything else that I see. So it's not that I couldn't conceive of a situation where a [passenger] manipulates a defendant or tricks a defendant, but I don't see that the details of these three incidents in this case are relevant to Mr. Granillo's knowledge.

1-ER-24–25. The court apparently believed the evidence was not relevant because the defense did not present direct evidence that the passenger tricked Mr. Granillo.

The court misconstrued the relevance rule; *Espinoza*, 880 F.3d 506, is instructive. In that case, the court erred "by applying the wrong legal standard to exclude relevant evidence of third-party culpability." *Id.* at 514. At trial for importation of methamphetamine under 21 U.S.C. §§ 952 and 960, the defense argued the defendant's "next-door neighbor in Mexico had packed her car with methamphetamine without her knowledge and used her as a 'blind mule.'" *Id.* at 510. The defense proffered the neighbor's prior convictions for importation of methamphetamine and possession with intent to distribute marijuana, his prior deportation, a Facebook post, and photos. *Id.* The trial court excluded each of those exhibits "on the ground that the defense's theory of what happened was too speculative." *Id.*

In *Espinoza*, this Court clarified that the correct legal rule for the admissibility of third-party culpability is "fundamental standards of relevancy." *Espinoza*, 880 F.3d at 511. This rule "require[s] the

admission of testimony which tends to prove that a person other than the defendant committed the crime that is charged." *Id.*

Here, as in *Espinoza*, the court "appl[ied] the wrong legal standard to exclude relevant evidence of third-party culpability." *Espinoza*, 880 F.3d at 517. The court erroneously required direct evidence that the passenger set up Mr. Granillo before admitting evidence that tended to prove the same point. 1-ER-24–25. However, even evidence that does not "tend[] to directly connect that person with the actual commission of the crime" is relevant to third-party culpability. *Espinoza*, 880 F.3d at 512. Evidence that "simply affords a possible ground of suspicion against [another] person" is relevant. *Id.* "That the defense's theory may be speculative is not a valid reason to exclude evidence of third party culpability." *Id.* at 517.

Form I-213 and the Sworn Statement were relevant, like the "more than a decade old" convictions that were admissible in *Espinoza*, 880 F.3d at 515. The Court explained that "[f]or the importation conviction, the conduct was *exactly the same here*—importation of methamphetamine through the Mexican border—and is therefore probative." *Id.* (emphasis added). Here, the court remarked that Form I-

36

213 addressed when "the [passenger] used a false immigration document. *That's exactly what happened in this case*[.]" 2-ER-147 (emphasis added). The similarities "render [the prior] probative despite the passage of time." *Espinoza*, 880 F.3d at 515. Form I-213 shows the passenger had the "requisite knowledge of how to obtain" counterfeit immigration documents and to use them to unwittingly have an officer further his violation of law; this "made it more likely that [he] had the knowledge and ability to set up [Mr. Granillo] as a 'blind mule.'" *Id.*

In the Sworn Statement, as here, the passenger presented a fraudulent document at a port of entry, with the purpose of violating immigration law; in both situations, he tried to unwittingly use immigration authorities to further his violation of law. 3-ER-366–67. Though the past act was "not identical to the charged offense," it was "relevant and minimally probative." *Espinoza*, 880 F.3d at 515.

### 3. The exhibits were statements against interest under Rule 804(b)(3) and business records under Rule 803(6).

The court's ruling that the documents were inadmissible hearsay was erroneous. Form I-213 and the Sworn Statement contained statements against interest and Form I-213 was also a business record.

### a. Both exhibits contained statements against interest.

Under Rule 804(b)(3), a statement is not excludable hearsay if: [1] the declarant is unavailable; [2] a reasonable person in the declarant's position would have made it only if he believed it to be true because it tended to expose him to civil or criminal liability; and [3] the statement is supported by corroborating circumstances that clearly indicate its trustworthiness. Fed. R. Evid. 804(b)(3). Statements within Form I-213 and the Sworn Statement satisfied all three requirements for statements against interest under Rule 804(b)(3).

First, the passenger was unavailable. Under Rule 804(a)(5)(b), a declarant is unavailable if he "is absent from the trial … and the statement's proponent has not been able, by … reasonable means, to procure the declarant's attendance." Fed. R. Evid. 804(a)(5)(b). Here, the passenger was absent from trial because the government deported him. 3-ER-308. After his removal, he was beyond the subpoena power of United States courts. *See* 28 U.S.C. § 1783(a) (limiting the federal courts' power to subpoena a person in a foreign country to nationals or residents of the United States). There was no reasonable means to secure his testimony, and the parties stipulated the passenger was

"unavailable" under Rule 804. 3-ER-305. Thus, the passenger was "unavailable" pursuant to Rule 804(a)(5)(b).

Second, statements within each exhibit exposed the passenger "to civil or criminal liability." Fed. R. Evid. 804(b)(3). Form I-213 included the passenger's admission to an INS agent that he had presented a counterfeit work permit to obtain a social security card. 3-ER-357. The Sworn Statement also included his admission to an INS agent that he knew he was barred from trying to enter the United States for five years after his deportation but tried to return years sooner. 3-ER-363. His admissions in both documents indicated that he had previously given false statements to federal officers under 18 U.S.C. § 1001. In Form I-213, he also admitted he was inadmissible or excludable for being "present in the United States without being admitted or paroled." 8 U.S.C. § 1182(a)(6)(A)(i). Thus, these statements exposed the passenger to both criminal and civil liability.

Third, there was corroboration for the statements that bore indicia of trustworthiness. Form I-213 was a "Record of Deportable Alien" recorded by an officer of the former Immigration and Naturalization Service. 3-ER-357. It contained the officer's signature and the

passenger's comments during an interview. *Id.* The Sworn Statement was recorded and signed by an INS officer. 3-ER-363. The passenger initialed each page and signed the third page, declaring his "answers were true and correct to the best of his knowledge." 3-ER-366–68. Since all requirements were met, Form I-213 and the Sworn Statement were admissible as statements against interest under Rule 804(b)(3).

### b. Form I-213 was admissible as a business record.

Form I-213 had two levels of possible hearsay and corresponding exceptions: what the passenger said to an immigration officer (statements against interest), and an immigration officer's recounting of those statements (business records). The defense argued Form I-213 was admissible under Rule 803(6), 2-ER-141, but the court did not provide any basis to exclude under this Rule. 1-ER-10–19. Rule 803(6) outlines the elements of "Records of a Regularly Conducted Activity," also known as business records, which meet a hearsay exception. Fed. R. Evid. 803(6). The elements are:

A record of an act, [or] event … if:

(A) the record was made at or near the time by –or from information transmitted by – someone with knowledge;

(B)    the record was kept in the course of a regularly
       conducted activity of a business, [or] organization …;

(C)    making the record was a regular practice of that
       activity;

(D)    all these conditions are shown by the testimony of the
       custodian …; and

(E)    the opponent does not show that the source of
       information or the method or circumstances of
       preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). The defense proffered that each element was met:

They are each prepared by a federal immigration employee … who
would have had personal knowledge of the information in the
document. They were made at or near the time of the events
discussed. Each document was prepared in the regular activities
of that office. The federal immigration employee who creates the
documents [is] under a duty to prepare them accurately. This is
part of their regular practice, and federal immigration agencies
are under a duty to keep those in the A-File.

2-ER-141.

Here, all five elements under Rule 803(6) were met. First, the

record was made on the same date the officer interviewed the

passenger. 3-ER-357. Second, Form I-213 is regularly prepared by

immigration officers to "start[] the deportation process." *United States*

*v. Ruiz-Lopez*, 749 F.3d 1138, 1142 (9th Cir. 2014). Third, filling out

Form I-213 is a regular practice of immigration officers. *Id.* Fourth, the

defense intended to introduce Form I-213 through the A-file custodian,

who was qualified to testify about these exhibits from the passenger's

A-file. 2-ER-136. Fifth, the government did not show the records were

unreliable. In fact, the government frequently relies upon Form I-213 in

immigration-related prosecutions. *See* 2-ER-157–58 (government

acknowledging Form I-213 is "the type of immigration document[] that

the United States may offer as a hearsay exception in … 1326 cases").

Thus, Form I-213 was admissible under Rule 803(6).

### 4. The exhibits were also admissible as 404(b) evidence to show the passenger's knowledge and intent.

The defense argued that Form I-213 and the Sworn Statement

were admissible under Rule 404(b) to establish the passenger's

"knowledge, lack of mistake and intent." 2-ER-142. The court did not

mention Rule 404(b) in its exclusion orders or explain why the exhibits

were not admissible under 404(b). 1-ER-11, 19.

Under Rule 404(b), "[e]vidence of any other crime, wrong, or act …

may be admissible for another purpose, such as proving motive,

opportunity, intent, preparation, plan, knowledge, absence of mistake,

or lack of accident." Fed. R. Evid 404(b)(1), (2). Rule 404(b) is a rule "of inclusion, and if evidence of prior crimes bears on other relevant issues, 404(b) will not exclude it." *United States v. Cruz-Garcia*, 344 F.3d 951, 954 (9th Cir. 2003) (quotation omitted). Furthermore, 404(b) is even more inclusive "when a criminal defendant offers similar acts evidence as a shield," as opposed to the restrictions "when a prosecutor uses such evidence as a sword." *United States v. Wright*, 625 F.3d 583, 608 (9th Cir. 2010). When considering evidence proffered by the defense here, the court was required to treat Rule 404(b) as a rule of inclusion.

Whether "evidence falls within the scope of Rule 404(b) is a question [this Court] review[s] *de novo*." *Wells*, 879 F.3d at 924–25. Here, the evidence fell within the scope of 404(b) "to show [the passenger's] knowledge of the schemes that are used to try [] to trick immigration authorities in the United States; [and] how he would have been part of a larger scheme, which was then used to trick Mr. Granillo[.]" 2-ER-146. Form I-213 "help[ed] establish the [passenger's] requisite knowledge of how to obtain" fraudulent immigration documents to enter the United States duplicitously.

*Espinoza*, 880 F.3d at 514. The passenger's knowledge "ma[de] it more likely" that he was equipped to conspire to set up a blind mule. *Id.*

In *Espinoza*, the marijuana conviction "demonstrated a possible connection to drug dealers in the United States and thus ma[d]e it more likely that the neighbor had the ability to sell the imported methamphetamine." *Espinoza*, 880 F.3d at 514. Likewise, the Sworn Statement "demonstrated a possible connection to [human smugglers] in the United States," making it "more likely that [he] had the ability" to secure a lower smuggling fee via a "blind mule." *Id.*

Furthermore, the facts of the Sworn Statement were similar to this case. There, the pilot and crew flew the passenger on a plane from Mexico to a United States port of entry, after the passenger presented a passport. Likewise, the driver here (Mr. Granillo) drove the passenger in a car from Mexico to a United States port of entry, after the passenger presented a passport. Neither the pilot there or the driver (Mr. Granillo) here knew that the passenger was planning to make an illegal reentry, or that the passenger was unwittingly using the transporter to further a violation of immigration law. These similarities made the Sworn Statement particularly "probative" to this case.

Because Form I-213 and the Sworn Statement "were relevant," the court "erred in excluding them under Federal Rule of Evidence 404(b) as improper propensity evidence." *Espinoza*, 880 F.3d at 515. The excluded evidence was relevant to establishing the passenger's knowledge and intent to defraud his transporters and immigration officers—"not merely his propensity to commit crime." *Id.* at 516.

### 5. The court erred by excluding the exhibits under Rule 403 without conducting any balancing analysis.

Rule 403 permits the exclusion of "relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, . . . or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The court mentioned "403" as a ground of exclusion of Form I-213 and the Sworn Statement but did not justify its 403 rulings. 1-ER-11, 19.

Because the court believed both exhibits were not "relevant," Rule 403 was not a logically sound basis for exclusion. Rule 403 permits the exclusion of "relevant evidence" in limited circumstances. The court could not have balanced the evidence's probative value against the danger of unfair prejudice if it believed the evidence was not relevant.

Because Form I-213 and the Sworn Statement had probative value, they should not have been excluded under 403. Providing the jury with additional information about the passenger did not pose a substantial danger of unfairly prejudicing the government, who would have had the opportunity to respond in closing argument. Similarly, the exhibits would not have "confus[e]d the issues," because the jury would have been instructed that it could only consider the evidence for a particular purpose, such as motive and/or intent. Fed. R. Evid. 403. Also, neither exhibit was "cumulative" because the contents were not presented in any other exhibit or testimony. Fed. R. Evid. 403.

Thus, the Form I-213 and the Sworn Statement were admissible under the Federal Rules of Evidence.

## B. The court's evidentiary rulings violated Mr. Granillo's Fifth and Sixth Amendment right to present a defense.

The court's complete exclusion of evidence of the passenger's fraud against the United States government also violated Mr. Granillo's constitutional right to present a complete defense. The court noted specific evidentiary rules to justify its exclusion, but it did not engage with the defense's constitutional objection. *See* 2-ER-120–29.

### 1. The standard of review is *de novo*.

Whether an evidentiary ruling violated the accused's Fifth and Sixth Amendment right to present a defense is reviewed *de novo*. *See United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010).

### 2. The court's exclusion was arbitrary and disproportionate to the reliability concerns the hearsay rules are designed to serve.

Whether "rooted directly in the Due Process Clause ... or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). The right to present a defense includes, "at a minimum, the right to put before a jury evidence that might influence the determination of guilt." *Stever*, 603 F.3d at 755 (cleaned up).

"Where constitutional rights directly affecting the ascertainment of guilt are implicated, evidentiary rules may not be applied mechanistically to defeat the ends of justice." *Greene v. Lambert*, 288 F.3d 1081, 1090 (9th Cir. 2002). However, "the Constitution permits judges to exclude evidence that is repetitive, only marginally relevant,

or poses an undue risk of ... prejudice or confusion of the issues.'"
*Holmes v. South Carolina*, 547 U.S. 319, 326 (2006) (cleaned up).

Courts apply balancing tests to determine whether challenged evidentiary rules or rulings are "disproportionate to the ends that they are asserted to promote." *Holmes*, 547 U.S. at 326. Here, the court must balance the effects of excluding Form I-213 and the Sworn Statement against the government's interest in presenting trustworthy and reliable information to the jury, which are the interests the hearsay rules are asserted to promote. *Id.* The exclusion of Form I-213 and the Sworn Statement left Mr. Granillo without the factual predicates that substantiated his defense theory. To show that the passenger may have been "in on it" or helped set him up, Mr. Granillo proffered evidence tending to show that the passenger had the experience and ability to do so. The ruling prevented Mr. Granillo from corroborating that he was a "blind mule" or that the passenger hid his citizenship status from him.

As to the government's interest in only introducing reliable information to the jury, there was no dispute that the immigration records were accurate. The government claimed that the excluded exhibits were being offered for propensity and to "villainiz[e]" the

passenger "through his prior immigration history." 2-ER-124. However, as outlined above, this evidence was admissible for the non-propensity purposes of knowledge and intent to establish that the passenger was capable of setting Mr. Granillo up as a "blind mule."

### C. The court's error was not harmless because it prevented Mr. Granillo from establishing the factual predicates to support his defense theory.

An evidentiary error requires reversal of a conviction unless the government meets its burden to prove it was "more probable than not that the erroneous [ruling] did not affect the jury's verdict." *Mirabal*, 98 F.4th at 987. "A violation of the right to present a defense requires reversal of a guilty verdict unless the Government [proves] that the error was harmless beyond a reasonable doubt." *Stever*, 603 F.3d at 757. The government cannot show harmlessness under either standard because the excluded evidence would have created doubt in a reasonable jury about the government's theory that Mr. Granillo intended to violate the immigration law.

This was an entirely circumstantial case. No one saw Mr. Granillo allegedly agree to transport a non-citizen, and he made no such admission post-arrest. No text messages were found between the

passenger and Mr. Granillo. 2-ER-242. Likewise, there were no communications between Mr. Granillo and Gerardo or Adrian. *Id.*

The error likely affected the verdict because the court's ruling prevented Mr. Granillo from corroborating his defense theory, specifically, that the passenger had the knowledge and ability to conspire to set him up as a "blind mule" and that Mr. Granillo did not intend to violate immigration law. The excluded evidence showed the passenger was a "repeat [offender] who kn[ew] how to commit fraud on the United States," as well as on an unknowing pilot in a prior illegal reentry. 1-ER-20. The only fact about the passenger's immigration history that the jury heard was that he had been deported. 2-ER-126. The mere fact of prior removal did not support an inference that the passenger could have set up Mr. Granillo to be an "unknowing driver."

The admission of evidence tending to show that the passenger had the experience and capacity to set Mr. Granillo up as a "blind mule" would have given the defense a powerful tool for challenging the government's evidence. "Given the lack of direct evidence supporting [Mr. Granillo's] conviction and the centrality of this evidence to [his] case, the error was not harmless." *United States v. Vallejo*, 237 F.3d

1008, 1024 (9th Cir. 2001), *opinion amended on denial of reh'g*, 246 F.3d 1150 (9th Cir. 2001). Thus, the constitutional error was not harmless.

## CONCLUSION

The Court should reverse the conviction because the court did not require the government to establish an element of this offense: a specific intent to transport a non-citizen within the United States in violation of immigration law, under 8 U.S.C. § 1324(a)(1)(A)(ii).

Respectfully submitted,

Dated: December 2, 2024

s/ *Veronica Portillo-Heap*

Veronica Portillo-Heap
Federal Defenders of San Diego, Inc.
Veronica_Portillo-Heap@fd.org

Attorneys for Mr. Granillo

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 24-46

I am the attorney or self-represented party.

**This brief contains** 9,998 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [          ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Veronica Portillo-Heap **Date** 12/02/2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** *Rev. 12/01/22*

# ADDENDUM

# TABLE OF CONTENTS

**U.S. CONSTITUTIONAL PROVISIONS**

U.S. Const. V ................................................................ (Addendum A)

U.S. Const. VI ............................................................... (Addendum B)


**FEDERAL STATUTES**

8 U.S.C. § 1324(a)(1)(A)(ii) ................................................ (Addendum C)


**FEDERAL RULES OF EVIDENCE**

Fed. R. Evid. 401 .......................................................... (Addendum D)

Fed. R. Evid. 403 .......................................................... (Addendum E)

Fed. R. Evid. 404 .......................................................... (Addendum F)

Fed. R. Evid. 803(6) ....................................................... (Addendum G)

Fed. R. Evid. 804(a) ....................................................... (Addendum H)

Fed. R. Evid. 804(b)(3) .................................................... (Addendum I)

# ADDENDUM A

# FIFTH AMENDMENT, UNITED STATES CONSTITUTION

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

# ADDENDUM B

# SIXTH AMENDMENT, UNITED STATES CONSTITUTION

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

# **ADDENDUM C**

# 8 U.S. Code § 1324
## Bringing in and harboring certain aliens

(a) Criminal penalties.

(1)

    (A) Any person who—

        (ii)  knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law;

    shall be punished as provided in subparagraph (B).

# ADDENDUM D

United States Code Annotated
    Federal Rules of Evidence (Refs & Annos)
        Article IV. Relevance and Its Limits

## Rule 401. Test for Relevant Evidence

Evidence is relevant if:

**(a)** it has any tendency to make a fact more or less probable than it would be without the evidence; and

**(b)** the fact is of consequence in determining the action.

# ADDENDUM E

United States Code Annotated
   Federal Rules of Evidence (Refs & Annos)
      Article IV. Relevance and Its Limits

## Rule 403. Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time, or Other Reasons

The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

# ADDENDUM F

United States Code Annotated
  Federal Rules of Evidence (Refs & Annos)
    Article IV. Relevance and Its Limits

## Rule 404. Character Evidence; Other Crimes, Wrongs or Acts

**(b) Other Crimes, Wrongs, or Acts.**

**(1) Prohibited Uses.** Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

**(2) Permitted Uses.** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

**(3) Notice in a Criminal Case.** In a criminal case, the prosecutor must:

(A) provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it;

(B) articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and

(C) do so in writing before trial--or in any form during trial if the court, for good cause, excuses lack of pretrial notice.

# ADDENDUM G

United States Code Annotated
  Federal Rules of Evidence (Refs & Annos)
   Article VIII. Hearsay (Refs & Annos)

# Rule 803. Exceptions to the Rule Against Hearsay-- Regardless of Whether the Declarant Is Available as a Witness

The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

**(6) Records of a Regularly Conducted Activity.**

A record of an act, event, condition, opinion, or diagnosis if:

**(A)** the record was made at or near the time by--or from information transmitted by--someone with knowledge;

**(B)** the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

**(C)** making the record was a regular practice of that activity;

**(D)** all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

**(E)** the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

# ADDENDUM H

United States Code Annotated
  Federal Rules of Evidence (Refs & Annos)
    Article VIII. Hearsay (Refs & Annos)

# Rule 804. Exceptions to the Rule Against Hearsay-- When the Declarant Is Unavailable as a Witness

**(a) Criteria for Being Unavailable.** A declarant is considered to be unavailable as a witness if the declarant:

**(1)** is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies;

**(2)** refuses to testify about the subject matter despite a court order to do so;

**(3)** testifies to not remembering the subject matter;

**(4)** cannot be present or testify at the trial or hearing because of death or a then-existing infirmity, physical illness, or mental illness; or

**(5)** is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure:

**(A)** the declarant's attendance, in the case of a hearsay exception under Rule 804(b)(1) or (6); or

**(B)** the declarant's attendance or testimony, in the case of a hearsay exception under Rule 804(b)(2), (3), or (4).

But this subdivision (a) does not apply if the statement's proponent procured or wrongfully caused the declarant's unavailability as a witness in order to prevent the declarant from attending or testifying.

# ADDENDUM I

# Federal Rule of Evidence 804

**(b) The Exceptions.** The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:

**(3) Statement Against Interest.** A statement that:

**(A)** a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and

<*[Text of paragraph (b)(3)(B) effective until December 1, 2024, absent contrary Congressional action.]*>

**(B)** is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

<*[Text of paragraph (b)(3)(B) effective December 1, 2024, absent contrary Congressional action.]*>

**(B)** if offered in a criminal case as one that tends to expose the declarant to criminal liability, is supported by corroborating circumstances that clearly indicate its trustworthiness after considering the totality of circumstances under which it was made and any evidence that supports or undermines it.